Filed 2/18/22  United Farm Workers of America v. Agricultural Labor etc. CA5

## <u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| UNITED FARM WORKERS OF AMERICA,<br><br>Petitioner,<br><br>v.<br><br>AGRICULTURAL LABOR RELATIONS BOARD,<br><br>Respondent;<br><br>AGUSTIN GARCIA et al.,<br><br>Real Parties in Interest;<br><br>GERAWAN FARMING, INC.,<br><br>Intervenor. | F080469<br><br>(ALRB Case Nos. 45 ALRB No. 8, 45 ALRB No. 4 & 44 ALRB No. 10)<br><br>**OPINION** |

ORIGINAL PROCEEDINGS; petition for review.

Martinez Aguilasocho & Lynch, Mario Martinez and Edgar Ivan Aguilasocho for Petitioner.

Santiago Avila-Gomez and Todd M. Ratshin for Respondent.

No appearance for Real Parties in Interest.

Sheppard, Mullin, Richter & Hampton, David A. Schwarz, Valerie E. Alter; Barsamian & Moody and Ronald H. Barsamian for Intervenor.

-ooOoo-

In 2013, the Agricultural Labor Relations Board (Board) ordered an election to decide whether to decertify an incumbent union (the United Farm Workers of America or UFW) based on an employee petition. Following the election, the Board impounded the ballots without tallying them pending resolution of whether misconduct by the employer, Gerawan Farming, Inc. (Gerawan), tainted the employees' decertification effort. Administrative proceedings were held and the Board nullified the election as a remedy for Gerawan's purported unfair labor practices. By petition for review under Labor Code section 1160.8,[1] Gerawan challenged both the Board's unfair labor practice findings and the remedy imposed of setting aside the election. In *Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (2018) 23 Cal.App.5th 1129 (*Gerawan*), we concluded the Board erred in several of its unfair labor practice findings as well as in the legal standard applied in reaching its remedial conclusions. Accordingly, we partially set aside the Board's decision, including its remedy, and remanded the matter for the Board to tally the votes and reconsider its election decision consistent with our opinion. (*Id.* at pp. 1141, 1240–1241.)[2]

On remand, the Board tallied the votes, which were overwhelming against the UFW, and ordered the UFW decertified in *Gerawan Farming, Inc.* (2018) 44 ALRB No. 10 (the decertification order). To obtain review of the decertification order, the UFW threatened to picket Gerawan, a Gerawan employee filed an unfair labor practice charge

---

[1]    Labor Code section 1160.8 is part of the Alatorre-Zenovich-Dunlap-Berman Agricultural Labor Relations Act of 1975 (Lab. Code, §§ 1140-1166.3) (the ALRA or the Act). Undesignated statutory references are to the Labor Code.

[2]    The petitions of the Board and UFW for review by the California Supreme Court were denied September 12, 2018, S249865. (*Gerawan, supra,* 23 Cal.App.5th at p. 1241.)

2.

against the UFW, and the Board's General Counsel instituted unfair labor practice proceedings against the UFW. Ultimately, the Board found the UFW committed an unfair labor practice.

The UFW filed a petition for review in this court under section 1160.8. The UFW, who contends it used the proper procedure to obtain review of the Board's decertification order, seeks to go back to the Board's initial decision to order the election arguing the Board did not have the statutory authority to do so and instead should have blocked the election based on the then unresolved unfair labor practice charges against Gerawan. The UFW also argues the Board erred when it decertified the union because it failed to properly analyze the record and consider the UFW's prior election challenges. We conclude the UFW forfeited its attempt to invalidate the election order and there is no merit to the UFW's challenges to the decertification order. Accordingly, we affirm the Board's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Board Orders the Election*

On October 25, 2013, Gerawan farmworker Silvia Lopez filed a petition for decertification with the Board, signed by herself and a considerable number of her coworkers, seeking to allow Gerawan's agricultural workers to decide for themselves whether the UFW would continue to be their certified bargaining representative. (*Gerawan, supra,* 23 Cal.App.5th at pp. 1141–1142.)[3]

On October 31, 2013, the Board's regional director issued a letter finding that while the petition made an adequate showing of interest pursuant to California Code of Regulations, title 8, section 20390, subdivision (b), the election should be blocked based

---

[3] This was not the first petition for decertification Lopez filed. She filed her first petition on September 18, 2013, which the regional director dismissed on September 25, 2013. (*Gerawan, supra,* 23 Cal.App.5th at pp. 1154–1155.)

on three pending unfair labor practice complaints against Gerawan.[4] The regional director stated those complaints would prevent him from finding a bona fide question of representation existed.[5]

The next day, the Board vacated the regional director's decision blocking the election and ordered an election be held on November 5, 2013, with the ballots impounded pending resolution of election objections and the unfair labor practice complaints. (*Gerawan Farming, Inc.* (2013) ALRB Admin. Order No. 2013-46, pp. 4–5 (the election order).) The Board explained the unfair labor practice complaints were either insufficient to block the election, had been remedied by remedial efforts Gerawan agreed to, or had been issued during the investigation of the election petition. (*Id.* at pp. 2–4.) The Board concluded "under the unique circumstances presented in this case, there are enough questions regarding the degree to which any taint has been remedied, as well as questions as to the appropriateness of relying on the late-filed complaint to block the election, to justify holding the election, impounding the ballots, and resolving these issues through election objections and litigation of the complaints." (*Id.* at p. 4.)

---

[4]    The UFW asks us to take judicial notice of copies of the regional director's September 2, 2013 letter dismissing the first petition and the regional's director's October 31, 2013 letter blocking the election. Although Gerawan opposes the request on relevancy grounds, we grant judicial notice of the letters as a record of a public agency since they provide relevant background with the understanding we do not judicially notice the truth of any findings or assertions set forth in the letters. (*Gerawan, supra,* 23 Cal.App.5th at p. 1155, fn. 35.)

[5]    Under the ALRA, "an election will be ordered if an adequate threshold showing has been made such that the Board has reasonable cause to believe that a bona fide question of representation exists. (See §§ 1156.3, 1156.7.)" (*Gerawan, supra,* 23 Cal.App.5th at p. 1142.) As we further explain in *Gerawan*, "[t]he case law describes this as a 'showing of interest,' " which "generally refers to the threshold number of worker signatures needed to obtain a representation election under the relevant statutes," and "serves the administrative function of confirming that the time and expense of conducting an election are warranted." (*Id.* at p. 1142, fn. 6.)

The UFW challenged the election order by filing a motion to vacate the decision or, in the alternative, for reconsideration. (*Gerawan Farming, Inc.* (2013) ALRB Admin. Order No. 2013-49, p. 1.) While the Board found neither motion was procedurally proper, it considered the UFW's arguments and found them unavailing. As pertinent here, the UFW argued (1) the Board did not have authority to vacate the regional director's blocking decision because a request for review had not been filed, and (2) the Board was compelled to block the election because there was an outstanding unfair labor practice complaint that alleged a refusal to bargain. (*Id.* at pp. 2–3.) In rejecting the arguments, the Board concluded it had sua sponte authority to review the blocking decision and could exercise its judgment to determine whether a pending unfair labor practice case would reasonably tend to affect employee choice and warrant blocking an election. (*Id.* at pp. 2–3.) The Board explained its order represented its judgment the ALRA's policies were best served by holding the election, impounding the ballots, and allowing the issues to be resolved through election objections and litigation of the complaints. (*Gerawan Farming, Inc., supra,* ALRB Admin. Order No. 2013-49 at pp. 3-4.)

On November 5, 2013, the farmworkers at Gerawan cast their votes in a secret ballot election conducted by Board staff and the Board impounded the ballots without tallying them. (*Gerawan, supra,* 23 Cal.App.5th at p. 1142.)

***The Consolidated ULP and Election Objection Administrative Proceedings***

The UFW, Gerawan and Lopez each filed election objections. Of the UFW's 32 objections, the Board set one for a hearing, held others in abeyance pending resolution of the unfair labor practice charges and the counting of the ballots, and dismissed the rest. (*Gerawan Farming, Inc.* (2013) 39 ALRB No. 20 at pp. 1–3.)

As relevant here, the Board again rejected the UFW's allegation "that the Board ordered the election without following the proper statutory procedure for seeking review of a Regional Director's decision to block the election." In response to the UFW's

5.

attempt to "resurrect[] the same argument" it previously raised, the Board reiterated its response from the order denying reconsideration: " 'Contrary to the UFW's argument, Labor Code section 1142, subdivision (b) does not preclude the Board from acting *sua sponte* to review a regional director's decision blocking an election." Since the Board already addressed and rejected the argument, it dismissed the objection. (*Gerawan Farming, Inc., supra,* 39 ALRB No. 20 at p. 27.)

The Board also dismissed the UFW's objection alleging Gerawan "engaged in bad faith bargaining through a proposal to exclude farm labor contractor employees from collective bargaining agreement" which "had a serious detrimental effect on employee free choice" for failure to provide sufficient declaratory support. (*Gerawan Farming, Inc, supra,* 39 ALRB No. 20 at pp. 16–17.) The Board explained the complained of conduct occurred months before the election and "[t]he UFW did not include any declaratory information to support its allegation that the conduct tended to interfere with the employees' free choice to an extent that the outcome of the election could have been affected." (*Ibid.*)

Finally, the Board rejected as meritless the UFW's objection alleging the Board "exceeded its authority in ordering that the election take place because there was no finding that a *bona fide* question of representation existed." (*Gerawan Farming, Inc., supra,* 39 ALRB No. 20 at p. 26.) The Board explained when it "clearly stated" in the election order there were enough questions concerning the degree to which any taint had been remedied and the appropriateness of relying on a late-filed complaint to block the election to justify holding the election, it implicitly "found it reasonable to believe that *a bona fide* question concerning representation existed that justified holding the election." (*Ibid.*)

A consolidated evidentiary hearing commenced in September 2014 before an administrative law judge (ALJ) assigned by the Board to hear both the UFW's election

objections and the general counsel of the Board's (the General Counsel's)[6] related claims that Gerawan committed unfair labor practices which allegedly impacted the validity of the decertification petition and required the election to be set aside.[7] (*Gerawan, supra,* 23 Cal.App.5th at pp. 1142–1143.) After the conclusion of the evidentiary proceedings, the ALJ issued a written decision finding Gerawan committed pre-election unfair labor practices that, in the ALJ's view, tainted the decertification petition. (*Id.* at p. 1143.) As a remedy for Gerawan's misconduct, the ALJ concluded the decertification petition would have to be dismissed and the election set aside. (*Ibid.*)

Exceptions to the ALJ's decision were made to the Board by all parties, including the UFW. With minor changes, the Board affirmed the ALJ's decision and rationale in its entirety. In *Gerawan Farming, Inc.* (2016) 42 ALRB No. 1 (the nullification order), the Board upheld the dismissal of the decertification petition and the nullification of the election based on the findings that Gerawan committed pre-election unfair labor practices that tainted the decertification effort. (*Gerawan, supra,* 23 Cal.App.5th at p. 1143.)

***The Appellate Proceedings***

Gerawan petitioned this court for review under section 1160.8, challenging the nullification order. Gerawan's petition attacked both the findings that it committed unfair

---

**6** The General Counsel of the Board, or General Counsel, is an appointed position distinct from the Board members; among other responsibilities, the General Counsel, who is appointed by the Governor, conducts the prosecution of unfair labor practices. (§ 1149.)

**7** As we explained in *Gerawan*: "Election objection procedures are set forth in section 1156.3, and proceedings under that section are commonly referred to as certification proceedings; whereas, unfair labor practice proceedings are addressed in section 1160.3, and final orders in unfair labor practice proceedings are reviewable in the courts of appeal under section 1160.8. Here, as noted, the two types of proceedings were *consolidated*, which becomes one of the significant factors in our analysis of whether we may address the election remedies." (*Gerawan, supra,* 23 Cal.App.5th at p. 1143, fn. 10.)

labor practices and the remedy the Board imposed of setting aside the employees' secret ballot election.  (*Gerawan, supra,* 23 Cal.App.5th at p. 1143.)

The UFW did not file a cross-petition asking this court to review the Board's order dismissing its objections.  Instead, both the Board and the UFW objected to our review of the Board's election-related decision, insisting Gerawan must first follow the technical refusal to bargain procedure before any judicial review of that determination could be made.  (*Gerawan, supra,* 23 Cal.App.5th at pp. 1143–1144.)  In taking this position, the UFW asserted the Board did not commit "any plain violation of statute" when it reversed the regional director's blocking decision, ordered the election to go forward with the ballots impounded until the unfair labor practice complaints and any election objections could be resolved, and later determined the election should be set aside.  The UFW further asserted the Board has "sole discretion to determine if a representational election petition filed by a party meets the statutory requirements that it must fulfill in order for an election to be held and to determine if that election is valid," and it had the power to order the election held and impound the ballots pending the misconduct investigations.[8]

In *Gerawan*, we determined that given the case's unique procedural posture, our review could "include *both* the unfair labor practice findings *and* the legal soundness of the conclusions and the election-related relief premised on those findings."  (*Gerawan, supra,* 23 Cal.App.5th at p. 1144.)  We concluded the record did not support several unfair labor practice findings the Board relied on and "the Board applied an incomplete or inadequate legal standard" in deciding to set aside the election, as it "applied a narrow 'taint' (or taint on the petition) standard under which it failed to meaningfully consider

---

[8]     The Board asks us to take judicial notice of the records filed in this court in *Gerawan, supra,* F073720, asserting they are relevant to the issues on review.  While Gerawan opposes the request on relevancy grounds, we grant the request, as the record provides relevant background information.

8.

whether a reasonable basis existed to conclude that Gerawan's misconduct interfered with the employees' ability to exercise free choice in the election." (*Ibid.*)

Accordingly, we vacated the portion of the Board's nullification order dismissing the petition and setting aside the election and remanded the matter to the Board to reconsider its decision based on the corrected findings and using the appropriate legal standard. (*Gerawan, supra,* 23 Cal.App.5th at pp. 1144–1145.) We instructed the Board to carefully evaluate "whether Gerawan's misconduct reasonably had a coercive impact on workers to an extent that the outcome of the election was materially affected," which included tallying the votes and weighing "the tally and size of the margin of victory … as a significant factor in its reconsideration of the election question on remand." (*Id.* at pp. 1240–1241.)

### *Remand Proceedings Before the Board*

On September 14, 2018, the day after we issued the remittitur in *Gerawan*, the Board ordered the regional director to open and count the ballots cast in the decertification election and prepare a tally. (*Gerawan Farming, Inc.* (2018) Admin. Order No. 2018-12.) The ballot count resulted in the following tally: (1) Votes cast for UFW—197; (2) Votes cast for No Union—1,098; (3) Number of unresolved challenged ballots—660; (4) Total number of all ballots cast—1,955.

On September 27, 2018, the Board issued the decertification order in which it certified the results of the election and determined the UFW lost its prior status as the employees' exclusive representative for purpose of collective bargaining. The Board concluded the few remaining violations upheld on appeal would not have changed the outcome of the election: "On the record before us on remand, we find that Gerawan's unlawful conduct did not interfere with the employees' free choice to such an extent that it affected the outcome of the election." (*Gerawan Farming, Inc., supra,* 44 ALRB No. 10 at p. 11.)

9.

On October 5, 2018, the UFW moved the Board to address unresolved objections and unfair labor practices, reopen the record, reconsider its decertification order, and vacate the certification of election results pending reconsideration. As relevant here, the UFW argued the Board improperly dismissed the following objections: (1) Gerawan engaged in bad faith bargaining regarding farm labor contractors; (2) the Board failed to find there was a bona fide question of representation before ordering the election; and (3) the Board's decision to vacate the regional director's blocking decision is void because a request for review was not filed.

The Board denied the motion on October 11, 2018, noting the UFW relied on arguments the Board previously addressed in *Gerawan Farming, Inc., supra,* 39 ALRB No. 20, and compelling circumstances did not exist to merit reconsidering them. (*Gerawan Farming, Inc.* (2018) Admin. Order No. 2018-13, pp. 1–3.) The Board found it was jurisdictionally bound by our instruction in *Gerawan* to reconsider the election decision consistent with the views set forth in our opinion, and it did so when it reconsidered the election order. (*Id.* at p. 4.)

**The UFW's Technical Unfair Labor Practice Proceeding**

On November 13, 2018, the UFW sent Gerawan a letter demanding to bargain, as it believed the Board's decertification of the UFW was made in error, was invalid as a matter of law, and had no legal force or effect. The UFW threatened to file charges and picket if Gerawan refused to bargain.

On December 10, 2018, Agustin Garcia, a Gerawan agricultural employee, filed an unfair labor practice charge against the UFW alleging its demand and threat violated the ALRA. Upon receiving the charge, the UFW admitted violating the ALRA "as a means to seek review" of the Board's decertification order, which it believed was made in error, and it had no other means to seek review "other than by engaging in this technical violation of the Act."

On December 28, 2018, the General Counsel issued an unfair labor practice complaint against the UFW based on Garcia's charges. Gerawan successfully moved for leave to intervene in the proceeding as an interested party. The UFW admitted all material allegations in its answer and alleged as affirmative defenses that it violated the ALRA to seek review of the Board's decertification order and the Board lacked statutory authority to order the decertification election in 2013.

The General Counsel moved for judgment on the pleadings. While the UFW did not oppose the motion, Gerawan did, arguing that before granting the motion, the ALJ was required to consider whether the proceeding was a sham litigation and the product of collusion between the UFW and one of its agents. Gerawan, noting the General Counsel conceded the UFW engineered the unfair labor practice charge to collaterally attack the Board's decertification decision, argued Garcia was not aggrieved by the UFW's conduct since his only interest in the outcome of the proceeding was that of a "union shill," and requested a hearing on its allegations of collusion between Garcia and the UFW.

The ALJ denied Gerawan's request for a hearing and granted judgment against the UFW, finding, among other things, that evidence of collusion between Garcia and the UFW was irrelevant to whether the UFW violated the ALRA by threatening to picket Gerawan. The ALJ found the UFW's picketing threat violated section 1154, subdivisions (a)(1) and (2), and (h), and recommended a cease-and-desist order and a notice-posting remedy. The ALJ agreed with the UFW that notice mailing and reading remedies were not appropriate as they would be punitive given the threat to picket was made solely to obtain judicial review. Gerawan filed exceptions to the ALJ's decision to which the General Counsel replied.

In *United Farm Workers of America* (*Garcia*) (2019) 45 ALRB No. 4, the Board concluded the UFW's picketing threat violated section 1154, subdivision (h). (*United Farm Workers of America* (*Garcia*), at p. 516.) In reaching this conclusion, the Board found Garcia had standing to file an unfair labor practice charge and rejected Gerawan's

11.

claim it was entitled to a hearing on its collusion allegations. The Board found a hearing was "unnecessary" and "not warranted" regardless of Garcia's motive in filing the charge or whether he sympathized with the UFW, as the General Counsel still had jurisdiction to investigate and prosecute the charge's allegations. (*Id.* at pp. 8, 11–15.) The Board declined to reach the issue of whether "a union may obtain indirect review of a prior representation election it has lost via a subsequent 'technical' unfair labor practice proceeding," as "the issue of the availability of 'judicial review is, of course, for the judiciary and not for the Board' to decide." (*Id.* at p. 5, fn. 4.)

The Board agreed with Gerawan that the record did not support the section 1154, subdivision (a)(1) and (2) violations the ALJ found and reversed the ALJ's order granting judgment on those claims. (*United Farm Workers of America (Garcia)*, *supra,* 45 ALRB No. 4 at pp. 16–19.) Although no party excepted to the ALJ's recommended remedial order, the Board reversed the ALJ's determination that notice mailing and reading remedies were not appropriate and ordered the full range of available notice remedies for the UFW's picketing threat, i.e., notice posting, mailing and reading, and providing notice to new employees. (*Id.* at pp. 19–20.) The Board remanded the unsupported claims to the ALJ for further proceedings and stated it would issue its final order on completion of the remanded proceedings and consideration of any exceptions filed. (*Id.* at pp. 20–21.)

Following the Board's remand order, the ALJ issued a decision dismissing the section 1154, subdivision (a)(1) and (2) allegations of the unfair labor practice complaint. The ALJ's decision also incorporated the notice remedies the Board ordered in its prior decision. The UFW filed a single exception to the ALJ's decision on remand arguing the notice remedies were punitive because the union's unlawful picketing threat was directed at Gerawan, not its employees. On November 26, 2019, the Board denied the exception in *United Farm Workers of America (Garcia)* (2019) 45 ALRB No. 8, finding it was barred because the UFW failed to seek reconsideration of the Board's prior order and, in any event, it lacked merit.

## DISCUSSION

### *Standard of Review*

"When reviewing questions of fact, we uphold the Board's findings if supported by substantial evidence on the record considered as a whole." (*Gerawan, supra,* 23 Cal.App.5th at p. 1162.) We give "special deference" to "findings and conclusions that are within the Board's realm of expertise." (*Ibid.*) We review "questions of law de novo." (*Id.* at p. 1163.) Finally, when reviewing the Board's remedial decisions, we "will interfere only where the remedy is patently unreasonable under the [ALRA] [citation], or where the remedy seeks to achieve ends other than those which can fairly be said to effectuate the policies of the ALRA." (*Id.* at pp. 1163–1164.)

" ' "[T]he results of a Board-supervised and certified election are presumptively valid" ' and that our review of the Board's decision to certify a union election is extremely limited." (*Uniroyal Technology Corp. v. NLRB* (1996) 98 F.3d 993, 997–998.) As the party objecting to the conduct of the election, the UFW bears the "heavy burden" of producing "specific evidence" that unlawful acts occurred which interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election. (*NLRB v. Golden Age Beverage Co.* (1969) 415 F.2d 26, 30.) The deferential standard of review derives from the "wide discretion" vested in the Board in conducting and supervising elections, therefore the Board's findings are entitled to "considerable weight … with judicial review narrowly limited to ascertaining only their reasonableness." (*Id.* at p. 29.) Where the Board has certified the results of an election "the only question presented to the Courts in an election review is whether the Board has reasonably exercised its discretion." (*Ibid.*)

### *Review of the Board's Decertification Order*

At the outset, we recognize the parties disagree on whether the UFW may obtain review of the decertification order by committing a technical unfair labor practice. The

13.

ALRA, like the National Labor Relations Act (NLRA),[9] does not allow for direct judicial review of Board orders in election proceedings. (§ 1158; 29 U.S.C. § 159(d); *J.R. Norton Co. v. Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1, 10, 27 (*J.R. Norton Co.*) ["an ALRB ruling concerning the validity of a representation election is not subject to direct judicial review"]; *Raley's, Inc. v. NLRB* (9th Cir. 1984) 725 F.2d 1204, 1206 [NLRA bars appellate courts "from undertaking direct review of certification proceedings"].) Instead, the statutory scheme provides for judicial review of Board certification orders only indirectly where a petition for writ of review is filed following a Board order in an unfair labor practice proceeding "based in whole or in part upon the facts certified" in a representation proceeding. (Compare §§ 1158, 1160.8 with 29 U.S.C. §§ 159(d), 160(f); *Nishikawa Farms, Inc. v. Mahony* (1977) 66 Cal.App.3d 781, 788.) In such cases, the record of the representation proceeding "shall be included" in the record of the unfair labor practice proceeding on review. (§ 1158; 29 U.S.C. § 159(d).)

An employer typically accomplishes this indirect method of obtaining judicial review of a Board certification order through what case law commonly refers to as a " 'technical refusal to bargain.' " (*Gerawan, supra,* 23 Cal.App.5th at p. 1218; *J.R. Norton Co., supra,* 26 Cal.3d at pp. 27–28.) Using this tactic, an employer obtains judicial review of a Board order in an election certification proceeding by (1) refusing to bargain with the representative whose election it challenges, (2) being found guilty by the Board of an unfair labor practice due to the refusal to bargain, and (3) obtaining review of

---

[9] The NLRA is codified at 29 United States Code section 151 et seq. The ALRA is modeled after the NLRA and the Legislature has specifically directed the Board to "follow applicable precedents" of the NLRA. (§ 1148; *Agricultural Labor Relations Bd. v. Superior Court* (1994) 29 Cal.App.4th 688, 694 ["[b]y legislative mandate," the ALRA "must be construed by referring to judicial interpretations of the analogous provisions of the [NLRA]"].) The Legislature intended the term " 'applicable' precedents" to be limited to " 'those federal precedents which are relevant to the particular problems of the California agricultural scene.' " (*F & P Growers Assn. v. Agricultural Labor Relations Bd.* (1985) 168 Cal.App.3d 667, 673 (*F & P Growers*).)

the election and certification during judicial review of the unfair labor practice decision. (*Gerawan,* at pp. 1217–1218; *F & P Growers, supra,* 168 Cal.App.3d at p. 680, fn. 10.)

The statutory scheme is silent on whether indirect review of Board certification orders is reserved exclusively to employers.  (See § 1158; 29 U.S.C. § 159(d).)  The UFW contends indirect judicial review through an unfair labor practice proceeding is available to a union seeking to challenge an election it lost, citing *Union de la Construccion de Concreto y Equipo Pesado v. NLRB* (1st Cir. 1993) 10 F.3d 14, 16 [surmising in dicta that a losing union may obtain judicial review of a representation decision by engaging in an activity that amounts to an unfair labor practice, such as picketing].[10]  The Board agrees with the UFW that the statutory scheme permits a union to obtain indirect judicial review of an adverse Board certification order via commission of a "technical" violation of the Act, such as the threat of unlawful representational picketing.[11]

Gerawan, however, contends the process of obtaining indirect review of Board orders in representation proceedings is reserved exclusively to employers and therefore is

---

[10]  Other federal courts have noted the possibility of using such a method to seek judicial review of election decisions in cases involving the NLRA, but apparently none has held a losing union may engage in a collateral attack after the union has been decertified.  (See, e.g., *United Federation of College Teachers v. Miller* (2nd Cir. 1973) 479 F.2d 1074, 1078–1079; *Lawrence Typographical Union v. McCulloch* (D.C. Cir. 1965) 349 F.2d 704, 708 (conc. opn. of Bazelon, Ch. J.), citing *NLRB v. International Brotherhood of Teamsters, etc.* (2nd. Cir. 1963) 314 F.2d 53, 59–61; *Distillery Workers v. Miller* (W.D. Ky. 1972) 1972 U.S. Dist. LEXIS 12965, *7–8; see also Goldberg, *District Court Review of NLRB Representation Proceedings* (1967) 4 Ind. L.J. 455, 503 [NLRB provides an available statutory review procedure to a union seeking to challenge the validity of an election it has lost].)

[11]  The Board notes the availability of judicial review to a losing union has been presented to it twice, but each time it declined to rule on the issue on the ground it must be decided by a court rather than the Board.  (*United Farm Workers of America* (*Garcia*), *supra,* 45 ALRB No. 4 at p. 5, fn. 4 and *United Farm Workers of America* (*Corralitos Farms, LLC*) (2014) 40 ALRB No. 6, p. 3.)

not available to unions, citing *NLRB v. Interstate Dress Carriers, Inc.* (3d Cir. 1979) 610 F.2d 99 [finding ability of union to secure post-election judicial review of irregularities in representation proceedings by picketing the employer as "entirely too speculative to be considered realistically available"].[12]  Gerawan adds that even if a union may obtain collateral review of a decertification order, it may not do so by collusive means, which it asserts occurred here when Garcia, who Gerawan claims is a vocal UFW supporter, filed an unfair labor practice charge against the UFW at the UFW's behest.[13]

We need not decide whether the UFW may obtain indirect review of the decertification order by committing a technical unfair labor practice because even if the UFW and Board are correct that it may do so, the UFW's underlying arguments

---

[12]    Gerawan also contends the UFW was required to petition for review directly from the decertification order under this court's decision in *Pandol & Sons v. Agricultural Labor Relations Bd.* (1979) 98 Cal.App.3d 580, and its failure to do so prevents it from attacking that order here.  In *Pandol*, on review of an employer's unfair labor practice, we remanded a question concerning union access to the employer's property to the Board and specifically retained jurisdiction to allow the parties aggrieved by the Board's order on remand to file points and authorities in this court opposing the order.  (*Id.* at pp. 593–594.)  In contrast here, in our opinion in *Gerawan,* we did not retain jurisdiction or grant any party aggrieved by the Board's order on remand the right to file briefs opposing that order.

[13]    We granted the Board's motion for leave to file a supplemental brief responding to Gerawan's arguments concerning collusion.  In the motion, the Board asserted Gerawan lacked standing to seek any relief in these proceedings because it is not aggrieved by the Board's decision.  The Board does not repeat this argument in its supplemental brief, asserting only, without argument or citation to authority, the collusion issues were an "improper collateral attack" because they were not presented in the UFW's petition for review.  Since the Board does not make any reasoned argument on this issue or provide citation to authority in its supplemental brief, we treat it as forfeited.  (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066; Cal. Rules of Court, rule 8.204(a)(1)(B).)  For this reason, we deny Gerawan's motion for leave to file a response to ALRB's supplemental brief to address the Board's arguments that Gerawan lacks standing to address collusion and participate in this appeal, which we previously deferred ruling on pending consideration of the merits of the petition for review.

16.

concerning the validity of the 2013 election order and the decertification order, which we address below, are meritless.

### *The Board's Decision to Order the November 2013 Election*

In challenging the Board's 2013 election order, the UFW resurrects the arguments it made several times to the Board before our decision in *Gerawan* that the Board: (1) did not have the statutory authority to vacate the regional director's 2013 decision to block the decertification election because it did not wait for a party to file a request for review of that decision; (2) exceeded its statutory authority when it ordered the decertification election without first determining whether there was a bona fide question of representation; and (3) should have blocked the election under the rule stated in *Cattle Valley Farms* (1982) 8 ALRB No. 24 that a regional director is required to dismiss an election petition if there is an outstanding complaint that relates to bad faith bargaining or unlawful assistance in decertification efforts. The UFW asserts that under the ALRA, it had to wait until this petition to obtain judicial review of these issues. Gerawan contends these arguments are forfeited or waived because the UFW failed to petition for review of the nullification order. We agree with Gerawan.

Section 1160.8 of the ALRA provides that "[a]ny person aggrieved by the final order of the board" in an unfair labor practice proceeding may petition for review "within 30 days from the date of the issuance of the board's order."[14] The deadline is jurisdictional and is not tolled by the filing of a motion for reconsideration. (*Jackson & Perkins Co. v. Agricultural Labor Relations Bd.* (1978) 77 Cal.App.3d 830, 832–833;

---

[14]  Section 1160.8 of the ALRA provides, in relevant part:  "Any person aggrieved by the final order of the board granting or denying in whole or in part the relief sought may obtain a review of such order in the court of appeal having jurisdiction over the county wherein the unfair labor practice in question was alleged to have been engaged in … by filing in such court a written petition requesting that the order of the board be modified or set aside.  Such petition shall be filed with the court within 30 days from the date of the issuance of the board's order."

17.

*United Farm Workers v. Agricultural Labor Relations Bd.* (1977) 74 Cal.App.3d 347, 350.)

We concluded in *Gerawan* that the nullification order was a final order for purposes of section 1160.8, including the election-related remedies, and review of the entire order was available. (*Gerawan, supra,* 23 Cal.App.5th at p. 1219.) Our conclusion was based on the following considerations: (1) the Board foreclosed any adequate remedy via the technical refusal to bargain process by failing to count the ballots; (2) we could reasonably construe the nullification order as one indivisible final order under section 1160.8 because the election-related remedies the Board ordered "were predicated upon and inextricably intertwined with the unfair labor practice holdings in the consolidated proceedings below"; and (3) the ultimate remedy the Board granted, namely, setting aside the decertification election, did not implicate the policy rationale for precluding direct review. (*Gerawan,* at p. 1219.)

Thus, if the UFW was an aggrieved party, it was required to petition for review and raise its arguments concerning the legitimacy of the decertification election in *Gerawan*. The UFW argues it was not aggrieved by the nullification order since the Board did not find it committed an unfair labor practice and the Board's order granted the remedy it was seeking, i.e., it dismissed the decertification petition and set aside the election. But a charging party is aggrieved if he gets less than he requested. (*Oil, Chemical & Atomic Workers v. NLRB* (D.C. Cir. 1982) 694 F.2d 1289, 1294–1295.) Here, there were additional unfair labor practice charges the ALJ and Board rejected when issuing the decertification order. Specifically, the Board rejected the UFW's contention the evidence established Gerawan instigated the decertification effort by hiring Lopez to lead that effort. (*Gerawan Farming, Inc., supra,* 42 ALRB No. 1 at pp. 8, 9-19.) Being aggrieved, if the UFW had complaints about the nullification order, it was obligated to seek review within 30 days and its failure to do so means the issues concerning that order are time barred.

Finally, we note that instead of filing its own petition for review or otherwise raising the arguments it now wishes to assert in the *Gerawan* proceeding, the UFW *represented* to this court in that proceeding that the Board did not violate any statute when it reversed the regional director's decision to block the election and ordered the election to go forward and for the ballots to be impounded. Contrary to that position, the UFW now argues the Board committed statutory violations when it made these decisions. Had the UFW believed the election was invalid, it was incumbent on it to at least assert that premise in *Gerawan.* We agree with Gerawan that the UFW has forfeited its ability to resuscitate arguments it could have, but did not, raise earlier.

### The Decertification Order

This leaves us with UFW's assertions of error with respect to the decertification order. The UFW asserts the Board failed to properly analyze the record on remand. We disagree.

In *Gerawan*, we instructed the Board to "consider all the relevant facts and circumstances and fairly determine, based on the record, whether the misconduct committed by Gerawan (under the corrected findings) tended to interfere with the employees' free choice to such an extent that it affected the results in the election." (*Gerawan, supra,* 23 Cal.App.5th at pp. 1239–1240.) We further instructed the Board to tally the votes and to weigh the size of the margin of victory as a "significant factor" in reconsidering the election question. (*Id.* at p. 1241.) While we rejected a *per se* rule presuming that knowledge of significant employer assistance would be disseminated throughout a workforce, we concluded that "where dissemination is necessary for making a prima facie case that an election should be set aside, a reasonable factual basis for inferring dissemination must be shown by the record." (*Id.* at p. 1232.) We advised the Board that if "the question of dissemination becomes relevant on remand, the Board should consider other relevant factors besides the violations themselves, including the

geographic scope and configuration of the Gerawan workplace, the size of the workforce, and the varying and spreadout worksites." (*Id.* at p. 1232, fn. 118.)[15]

On remand, the Board tallied the ballots, weighed whether Gerawan's misconduct affected the election results, and found Gerawan's unlawful conduct did not interfere with the employees' free choice to such an extent that it affected the election's outcome. (*Gerawan Farming, Inc., supra,* 44 ALRB No. 10 at p. 11.)  First, with respect to Gerawan's direct dealing based on its distribution of flyers to employees advising them Gerawan decided to grant the wage increases on its own, the Board stated it could not conclude this misconduct interfered with the employees' free choice to such an extent that it affected the election results given the passage of time and the large margin of the no union victory.  (*Id.* at pp. 6–7.)

Next, with respect to unlawful assistance by Gerawan, the Board found a crew boss' facilitation of signature gathering for the decertification petition in a crew of 30 to 38 people several weeks before the election did not affect the election's outcome given the approximately 900 vote margin of victory for the no union choice.  The Board was unable to find Gerawan's preferential treatment of Lopez and another employee in allowing them to skip work in extreme amounts so they could solicit signatures for the decertification petition impacted the election to the extent it affected the outcome, as the record did not support a finding of instigation against Gerawan or that the employees were acting as Gerawan's agents, and there was no evidence of threats, reprisals, or intimidation, or promises of benefit, during the signature gathering that could have influenced workers when they cast their votes.  (*Gerawan Farming, Inc., supra,* 44 ALRB No. 10 at pp. 8–10.)

---

[15]   The UFW extensively argues *Gerawan* was wrongly decided, stating it is merely preserving its argument that the California Supreme Court should reject our reasoning. We note that our decision in *Gerawan* is law of the case and must be adhered to throughout the progress of this case.  (*Kowis v. Howard* (1992) 3 Cal.4th 888, 892–893.)

Finally, the Board concluded with respect to a piece-rate increase given to field grape packers on October 25, 2013, the record did not support a finding the violation impacted free choice to such an extent it affected the election results based on the unique circumstances, the fact the increase was temporary and affected only a small portion of the workforce, and the large margin of the no union victory. (*Gerawan Farming, Inc., supra,* 44 ALRB No. 10 at pp. 10–11.)

The UFW contends the Board did not properly evaluate Gerawan's misconduct because it failed to: (1) determine whether Gerawan's unlawful assistance was disseminated throughout its workforce; (2) consider instances of direct dealing that we did not address in *Gerawan*; (3) address its objection to the ALJ's finding that a June 2013 unilateral wage increase for all farm labor contractor employees had no effect on the election; and (4) consider its objection, which the Board held in abeyance until the ballots were counted, that Gerawan provided unlawful assistance by paying for, supporting or coercing worker participation in anti-UFW protests.

On the first assertion, while we did state in *Gerawan* that the Board could consider whether knowledge of Gerawan's unlawful assistance was widely disseminated throughout its workforce, it need only have done so if the question of dissemination became relevant to whether the election should be set aside. (*Gerawan, supra,* 23 Cal.App.5th at p. 1232 & fn. 118.) Here, the Board reasonably could conclude that given the margin of victory for the no union choice and its findings that the crew boss' conduct was limited to a small crew several weeks before the election, Gerawan did not instigate the decertification petition, and the lack of evidence of threats, reprisals, intimidation or promise of benefit during Lopez's signature gathering, it was not necessary to reach the issue of dissemination.

With respect to direct dealing, the UFW's argument is premised on a misreading of our decision in *Gerawan*. While in the nullification order the Board found Gerawan's direct contact of employees through "flyers/mailers/DVD" with a consistent message that

21.

the union was unnecessary or would ignore or delay the resolution of the worker's issues constituted direct dealing, we reversed that finding as "far too broad." (*Gerawan, supra,* 23 Cal.App.5th at p. 1211.) Instead, we concluded these communications were not direct dealing regarding the terms and conditions of employment because they were Gerawan's attempts to explain and provide information concerning the union's return after a long absence. (*Ibid.*) As the Board correctly points out, the only instance of direct dealing we affirmed was concerning the March 2013 flyers or mailers. (*Ibid.*) The Board correctly considered that instance on remand and concluded it did not interfere with employee free choice as to affect the election's results.

The UFW's two remaining claims misstate the record. With respect to whether the Board ruled on the UFW's objection to the ALJ's finding that a June 2013 wage increase for farm labor contractor employees did not affect the election, the Board affirmed this finding in the nullification order when it affirmed the ALJ's factual findings and legal conclusions except as modified. Moreover, as the Board points out, the UFW did not seek review of the Board's decision and therefore is precluded from relitigating it here. On whether the Board considered the UFW's objection that employees were coerced into participating in anti-UFW protected activities, the issue was fully litigated at the hearing before the ALJ and addressed in both his recommended decision and the Board's nullification order. (*Gerawan Farming, Inc., supra,* 42 ALRB No. 1 at pp. 32–54.) While the Board found Gerawan's support for these activities unlawful, we rejected those findings in *Gerawan, supra,* 23 Cal.App.5th at pages 1183-1203. Therefore, the Board correctly declined to consider this issue on remand.

Finally, for the first time in its reply brief, the UFW contends the Board erred by reversing the ALJ's determination that notice mailing and reading remedies were inappropriate. The argument is forfeited because the UFW did not assert it in its opening brief. (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 559 [" '[w]e will not ordinarily consider issues raised for the first time in a reply brief' ";

22.

" '[a]n issue is new if it does more than elaborate on issues raised in the opening brief or rebut arguments made by the respondent in respondent's brief' "].)

The UFW contends the argument is not new because it is merely responding to a footnote in the Board's brief, in which the Board noted neither the UFW's petition for review nor its opening brief raised any issue regarding the Board-ordered notice remedies and submitted it appropriately denied the UFW's exception to the notice remedies. The UFW's argument in its reply brief does more than rebut the Board's argument—it goes into depth about the appropriateness of imposing notice remedies in a case such as this, and therefore it is a new argument. The UFW also asserts we should consider the issue because it poses a pure question of law based on undisputed facts. (*Taye v. Coye* (1994) 29 Cal.App.4th 1339, 1344 [a reviewing court has discretion "to consider new theories when the issue posed is purely a question of law based on undisputed facts"].) Given that the UFW had every opportunity to raise this issue in its petition and opening brief, and our consideration of the issue would deprive the Board of the opportunity to counter it, we decline to exercise our discretion to consider the issue.

## DISPOSITION

The petition for review is denied. The Board's orders are affirmed. The Board and Gerawan are awarded their costs in this original proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(B).)

DE SANTOS, J.

WE CONCUR:


HILL, P. J.


LEVY, J.


23.